UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JANICE J. HERR, individually and as
Special Administrator on behalf of
THE ESTATE OF RICHARD J. HERR,
Deceased,

        Plaintiff,

        -vs-        Case No. 10-C-1114

LINDE LLC, f/k/a the BOC Group, Inc.
and/or Airco, Inc., et al.,

        Defendants.

## DECISION AND ORDER

This case was remanded for further proceedings by the MDL 875 Court, United States Judicial Panel on Multidistrict Litigation, *In re: Asbestos Products Liability Litigation (No. VI)*. The sole remaining defendant, Linde LLC, formerly known as the BOC Group, Inc. and/or Airco, Inc. (hereinafter "Airco"), moves for summary judgment.

The plaintiff, Janice Herr, individually and on behalf of the Estate of Richard Herr, moved to strike Airco's motion for summary judgment as untimely pursuant to the scheduling order established by the MDL court. The Court denied this motion because it wanted to "address the merits of the defendant's arguments instead of conducting a trial that is potentially

unnecessary." ECF No. 35. District courts have wide latitude in managing their dockets, including the power to consider an untimely motion for summary judgment. *See, e.g., Jones v. Coleman Co., Inc.*, 39 F.3d 749, 753 (7th Cir. 1994).

The Court also recognizes that the MDL court denied Airco's summary judgment motion. For the reasons that follow, the Court disagrees and finds that Airco is entitled to summary judgment. The MDL court's holding to the contrary is not preclusive. *See Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995) ("the denial of summary judgment has no res judicata effect, and the district court may, in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist").

Finally, the Court directed the parties to address Airco's citizenship. The Court is now satisfied that it has jurisdiction because the parties are completely diverse. *See* ECF No. 40.

## I. Background

The plaintiff alleges that Herr contracted mesothelioma through the use of Airco-distributed, asbestos-containing insulated gloves/mittens. The distinction between gloves and mittens is crucial for purposes of this motion. To avoid confusion, the Court will refer to the items at issue as

- 2 -

gloves in a generic sense, unless otherwise noted. Herr, who worked as a sculptor and an art instructor, used insulated gloves to handle heated molds. Herr was diagnosed with mesothelioma in March of 2008 and died on September 12, 2009.

From 1970-76, Herr worked as a visiting artist at the Prairie School in Racine, Wisconsin. Herr constructed investments, which are similar to molds, for his sculptures. He would mix a combination of 60% plaster, 40% silica sand, 15-20% asbestos, and water to make the investment. Herr would reach into fifty (50) pound bags of raw asbestos with his bare hands and mix it into the other dry materials. Herr's face was in close proximity to the raw asbestos, which created dusty conditions in his environment. The asbestos was thrown into the investment mix, which also created dust. Herr used 10 to 12 handfuls of raw asbestos per day. When the bags were empty, he would turn them upside down and shake them out, also creating dust. Herr believed that he went through an average of two 50-pound bags of raw asbestos a month.

Herr not only made investments for his own artwork, but he also assisted students with theirs, and was in the area when they would make their own investments. After the investments dried, Herr would clean them by knocking off the asbestos material with tools, which also created dust in

- 3 -

the air. There was no ventilation over the area where Herr made the investments.

Herr used insulated gloves when he poured molten aluminum into the investment to create metal sculptures. On some days, asbestos gloves were used to handle as many as 30 to 40 different pieces of work. Herr would slap the gloves together every time he wore them to remove accumulated dust.

David Drewek, head of the art department at the Prairie School from 1964-2001, handled the purchasing of supplies requested by visiting artists such as Herr. The gloves at issue were always purchased through M&F Distributing Co. M&F was party to a separate suit brought by Herr in state court in 2008. That matter settled with respect to certain defendants, including M&F. Airco was not a party to that lawsuit.

Drewek and Herr went to M&F together at least 4-6 times a year to pick out supplies. Drewek never saw catalogs or brochures at M&F and did not know the brand of gloves being purchased. The gloves were white and had no labels. About four pairs of asbestos gloves were ordered every year because they "wore out" and holes would develop.

## II. Analysis

Summary judgment should be granted if "the movant shows that

- 4 -

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court accepts as true the evidence of the nonmovant and draws all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Causation

Causation is a required element for both of plaintiff's claims. *Schreiner v. Wieser Concrete Prods., Inc.*, 720 N.W.2d 525, 528 (Wis. 2006) (negligence); *Westphal v. E.I. du Pont de Nemours & Co.*, 531 N.W.2d 386, 391 (Wis. 1995) (strict liability). Therefore, to survive summary judgment, Herr's estate must create an issue of fact as to whether Herr inhaled asbestos from Airco's gloves/mittens. "A plaintiff does not meet this burden simply by establishing that he inhaled asbestos dust; rather, he must produce evidence tending to show that he inhaled asbestos produced by the *defendant's* product." *Harris v. Owens-Corning Fiberglass Corp.*, 102 F.3d

- 5 -

1429, 1432 (7th Cir. 1996) (emphasis in original).

It is undisputed Airco never *manufactured* insulated gloves or mittens. Defendant's Proposed Findings of Fact, ¶ 59. Instead, Airco primarily produced industrial gases, and was also a manufacturer of welding consumables, such as welding rods. *Id.*

At various times during the period 1960 to 1980, Airco purchased personal protective equipment in the form of welding gloves and mittens from companies that manufactured them. Airco arranged for its logo to be placed on these items for resale. However, the gloves that Herr used were white and *unlabeled*. Plaintiff's Proposed Findings of Fact, ¶ 21; Defendant's Proposed Findings of Fact, ¶¶ 45-46.

In fact, Airco's corporate witness, Patricia Fleming, baldly states that Airco did not sell white asbestos *mittens* during the 1960 to 1980 time period. DPFF, ¶ 62. Instead, Airco sold only three types of mittens, as opposed to five-finger gloves. The first type of mitten was a one-finger mitten (the index finger was separate from the other three fingers) made of green leather and not asbestos. The second type of mitten was also a one-finger mitten and was made from high-grade, heat-resistant leather tanned green in color. This second mitten was also not made of asbestos. The third type of mitten – also a one-finger mitten – was made of green leather with

- 6 -

an aluminized asbestos backing. This green leather, one-fingered, aluminized asbestos-backed mitten came with and without a wool lining. *Id.*, ¶ 63.

In response, the plaintiff points to the 1965 M&F sales catalog, which contains descriptions of Airco brand asbestos gloves and other gloves that do not contain asbestos.[1] One type of glove in the 1965 catalog is described as "Airco Asbestos gloves. Having exceptional wearing qualities, Airco Asbestos gloves are made of the best commercial, closely woven cloth, containing not less than 79% asbestos. … Stock No. 1305-0100 …" These gloves are white and have five fingers. ECF No. 37-9, at 3. The same description is included in Airco's catalog. ECF No. 37-20

The problem with this argument is that there is no evidence connecting Herr to the use of white, five-fingered, asbestos-containing gloves, as opposed to hand-protecting gloves with a hole only for the thumb, generally known as mittens. At his deposition, Drewek testified that the "asbestos gloves" looked like *"giant mittens. No fingers, just thumbs and the mitten part,* and they went from your fingertips maybe halfway up your forearm." ECF No. 25-10, at 13 (emphasis added). Drewek

---

[1] M&F's corporate witness, Charles Gray, was unable to locate any subsequent catalogs until an edition published in 1987.

was questioned further about "another pair" that was used "when things that weren't very hot, but that were fingered gloves." *Id*. Drewek clarified that the fingered gloves were "just regular leather work gloves," not "asbestos gloves." *Id*. at 15 (discussing Exhibit 3, ECF No. 25-11 at 2).

Even if the Court concluded – very generously – that there was an issue of fact pertaining to the distinction between mittens and gloves, it bears repeating that Airco's gloves were *labeled*, but the gloves that Herr used were *unlabeled*. This evidence is undisputed and confirmed in the record presented to the Court. Therefore, the plaintiff cannot meet her burden of proof as to causation, and Airco is entitled to summary judgment.

### B. *Pierringer* release

In the 2008 action, Richard and Janice Herr alleged that M&F, just like Airco, should be liable for supplying asbestos-containing gloves for use by Herr at the Prairie School. The Herrs executed the following release with respect to M&F and its insurers:

> In accepting said sum, Plaintiffs, Richard J. Herr and Janice A. Herr, along with their agents, attorneys, employees, partners, successors, and assigns (individually and collectively the 'Releasing Parties') do hereby release and discharge that fraction, portion or percentage of the total cause of action or claim for damages Plaintiffs … have or may hereafter possess against all parties responsible for its damages which shall by trial or other disposition be determined to be the sum of the fractions, portions or percentages of cause and negligence for

which the Parties herein release are to be found liable as the consequence of the above incident.

This is known as a *Pierringer* release, which "operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to nonsettling defendants and to bar subsequent contribution actions the nonsettling defendants might assert against the settling defendants." *Fleming v. Threshermen's Mut. Ins. Co.*, 388 N.W.2d 908, 911 (Wis. 1986) (discussing *Pierringer v. Hoger*, 124 N.W.2d 106 (Wis. 1963)). In this context, a *Pierringer* release extinguishes "all responsibility for placing the defective product in the stream of commerce." *St. Clare Hosp. of Monroe, Wis. v. Schmidt, Garden, Erickson, Inc.*, 437 N.W.2d 228, 232 (Wis. Ct. App. 1989). Thus, Airco is entitled to summary judgment on the strict liability claim for the alternative reason that it was released pursuant to the M&F settlement. *See id.* at 232-33 ("Unlike the negligent tortfeasor whose liability is based on his or her acts (or failure to act), the liability of strictly liable tortfeasors arises not from any conduct on their part, but from the nature or condition of a product. As a result, where a settling plaintiff assumes the strictly liable tortfeasor's share of responsibility for the damages, leaving only ordinarily negligent tortfeasors as defendants, the plaintiff has assumed all of the liability attributable to

the product").

## III. Conclusion

Airco is entitled to summary judgment because the plaintiff did not create an issue of fact as to whether Richard Herr was exposed to asbestos-containing gloves distributed by Airco. Alternatively, Airco is entitled to summary judgment on the strict liability claim because the claim was released in the M&F litigation. Therefore, the defendant's motion for summary judgment [ECF No. 22] is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of October, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**